[Cite as *State v. Westberry*, 2024-Ohio-2532.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-10-086 |
| | : | O P I N I O N |
| - vs - | | 7/1/2024 |
| | : | |
| JAMES LOVELL WESTBERRY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CR40582

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Joshua A. Engel, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, James Lovell Westberry, appeals his conviction in the Warren County Court of Common Pleas after the trial court found him guilty of one count of second-degree felony aggravated arson. For the reasons outlined below, we affirm Westberry's conviction.

{¶ 2} On June 5, 2023, the Warren County Grand Jury returned a six-count

indictment charging Westberry with, among others, one count of aggravated arson in violation of R.C. 2909.02(A)(2), a second-degree felony pursuant to R.C. 2909.02(B)(3).[1] This charge arose after it was alleged Westberry, during the early morning hours of May 6, 2023, knowingly caused physical harm to the Warren County home where he had been living with the victim, Sandra, his on-again-off-again ex-girlfriend and mother of two of his children, after letting the air out of two of Sandra's tires by placing a bag of trash and other debris in a firepit located within two-to-three feet of the home's back sliding glass door and setting it on fire.[2] Westberry admittedly started this fire after Sandra told him to move out, removed his personal belongings from the home, and changed the locks on the door while Westberry was out at a bar with a female friend. There is no dispute that the fire Westberry started burned so hot that it caused damage to both the interior and exterior of Sandra's home. This included blowing out the sliding glass door's exterior windowpane and melting the sliding glass door's interior vertical blinds. There is also no dispute that Sandra, as well as four juveniles, two of which were Westberry's own children, two-year-old twin boys, were asleep in the house when Westberry started the fire.

{¶ 3} On June 7, 2023, Westberry was arraigned and entered a plea of not guilty to the aforementioned aggravated arson offense. Two months later, on September 7, 2023, the trial court held a bench trial on the matter. During trial, the trial court heard testimony and accepted evidence from a total of five witnesses. This included testimony from the victim, Sandra, and the defendant, Westberry. As part of his testimony, Westberry stated that upon coming home from the bar and finding his personal belongings had been removed from the home and the locks had been changed:

At that point, I proceed to go to the back of the house where I

---

1. The other five offenses that Westberry was charged with are not relevant to this appeal.

2. This court has changed the victim's name for purposes of issuing this opinion.

sat at the patio edge to make a fire, but the wood was wet. So, I had to go back to the front. Thankfully we had not removed the trash. I take a sheet of cardboard, as well as a top bag of paper, I mean of trash and * * * [t]hen I go to the back and I take a seat, put those items in and I tried to start the cardboard or the trash because we would typically use a green trash bin in the house to hold our timber as well, that I had no access to.

{¶ 4} The following exchange between Westberry and his trial counsel then occurred:

Q. Okay. All right, so how did you light the fire?

A. When I sat all of the items there, I actually had to go back to the car to retrieve a lighter and I used that lighter to start the cardboard.

Q. Okay, and, what happened next?

A. It actually didn't take, it was kind of flickering, due to that wind and at that time, that's when you could hear like a screech or some sound, and I jetted to my car, just –

{¶ 5} The exchange between Westberry and his trial counsel then continued as follows:

Q. Okay. So, you hear the animal, you're scared, what do you do?

A. I left, I went to my car and I get in and I proceed to leave.

Q. And, you had just said the fire was flickering, so it wasn't actually really burning?

A. No, due to that wind as I sat there trying to start it and stay close to the house, it was—as if you're taking the grass tender, where you're trying to kind of blow on it, like get smoke, but no actually fire, so as it started and I hear that, I'm blowing it's going, screech --- I jet.

{¶ 6} Westberry testified that he then went and parked his car in a nearby Lowe's parking lot. Once there, Westberry testified that he text messaged with another female friend before ultimately driving to yet another female friend's house to get a "nap before

- 3 -

going on about the day." When asked, Westberry testified that he decided to start a fire because "it was cold out. I may have had a T on and I'm just trying to stay warm." The record indicates that it was approximately 57 degrees with a light breeze coming from the south/southeast at the time Westberry started the fire.

{¶ 7} Upon hearing the testimony and evidence presented, and following the conclusion of the parties' closing arguments, the trial court issued its verdict from the bench finding Westberry guilty of the charged aggravated arson offense. In so doing, the trial court stated, in pertinent part, the following:

> So, here's where I'm at with this case Mr. Westberry. You know I think the facts in this case are really pretty simple. I think that [Sandra] kicked you out [of her house]. I think that you got mad. I think that you let the air out of her tires. That you grabbed a bag of trash, went around back and started a fire. I do not believe this business about you trying to keep warm or running back to your car to get away from wild animals. I do not find that to be believable or credible. This was a bad decision that you made in anger, frustration, maybe a little payback, could be all three of those. For me the case is just that simple on the facts.

{¶ 8} Continuing, the trial court then stated:

> [Aggravated arson in violation of R.C. 2909.02(A)(2)] does not require [the state to prove a] substantial risk of serious physical harm. [That statute merely requires the state to prove] that you knowingly caused physical harm to an occupied structure. There's no doubt in this case, this is an occupied structure. Knowingly means that you are acting regardless of your purpose, purpose doesn't matter in this case, that you are acting, when you're aware that your conduct will probably cause a certain result, or be of a certain nature. I can't look into your mind and know what you were thinking, but I have to look at all the facts and circumstances in evidence. Also, your conduct is not limited to only the most immediate and obvious result of your actions. Your culpability and your responsibility also follows to the nature and foreseeable things that follow from you starting the fire that would happen in an ordinary course of events from that act.

{¶ 9} The trial court thereafter concluded by stating, "[b]ased on that, I find that

the State has proven beyond a reasonable doubt all of the essential elements of [aggravated arson in violation of R.C. 2909.02(A)(2)]."

{¶ 10} On October 20, 2023, the trial court held a sentencing hearing. At that hearing, the trial court sentenced Westberry to a three-year community control term. The trial court's imposition of community control included a sanction that required Westberry to enter and successfully complete a community based correctional facility. The trial court's imposition of community control also included a requirement that Westberry successfully complete any follow up treatment and medications as ordered/prescribed by that community based correctional facility. The trial court further ordered Westberry to pay court costs and notified Westberry of his duty to register as an arson offender in accordance with R.C. 2909.14. Upon the conclusion of the trial court's sentencing hearing, Westberry filed a notice of appeal. Following briefing, Westberry's appeal was submitted to this court for consideration on May 15, 2024. Westberry's appeal now properly before this court for decision, Westberry has raised two assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE CONVICTION IN THIS MATTER WAS UNSUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 13} In his first assignment of error, Westberry argues the trial court's verdict finding him guilty of one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2) was not supported by sufficient evidence. We disagree.

{¶ 14} A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Clinton*, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Such a challenge "requires a determination

- 5 -

as to whether the state has met its burden of production at trial." *State v. Boles*, 2013-Ohio-5202, ¶ 34 (12th Dist.). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 2022-Ohio-244, ¶ 39 (12th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Therefore, "[i]n a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Carter*, 2018-Ohio-29, ¶ 7 (8th Dist.), citing *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79-80. Rather, in determining whether the state has met its burden of production at trial, the issue is simply whether there exists any evidence in the record that the trier of fact could have believed, construing all evidence in favor of the state, to prove the elements of the crime beyond a reasonable doubt. *State v. Ell*, 2023-Ohio-4583, ¶ 16 (12th Dist.).

{¶ 15} As noted above, following a bench trial, the trial court found Westberry guilty of one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2). Pursuant to that statute, no person, "by means of fire or explosion," shall "knowingly" cause "physical harm to any occupied structure." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). To prove the defendant acted knowingly, "the evidence must show that the defendant was subjectively aware that a specified result is probable." *State v. Elkins*, 2024-Ohio-1314, ¶ 24 (12th Dist.). When determining whether the defendant acted knowingly, "[i]t is a defendant's state of mind and perception which are measured; not an objective reasonable expectation." *State v. Berry*, 2007-Ohio-7082, ¶ 12 (12th Dist.). "Whether a defendant acts knowingly can be determined from all the surrounding facts and circumstances,

including the doing of the act itself." *State v. Redden*, 2024-Ohio-1088, ¶ 10 (12th Dist.). Therefore, rather than direct evidence, the issue of whether the defendant acted knowingly is "frequently demonstrated through circumstantial evidence." *State v. Sherman*, 2021-Ohio-4532, ¶ 35 (10th Dist.).

{¶ 16} Westberry argues the state failed to establish that he acted knowingly to cause physical harm to Sandra's house by starting a fire in the fire pit sitting on the home's back patio. To support this claim, Westberry argues that "the evidence was that he simply set a fire in a fire pit and what occurred after that was an accident." However, upon review of the record, and when construing all evidence in favor of the state, we find the state presented more than enough evidence to establish Westberry's guilt beyond a reasonable doubt. As stated previously, the record in this case indicates that Westberry, after letting the air out of two of Sandra's tires, placed a bag of trash and other debris in a firepit located within two-to-three feet of the home's back sliding glass door and set it on fire. The record indicates that Westberry did this after coming home from the bar and discovering Sandra had removed his belongings from the house and changed the locks. The trial court found this was a "bad decision" that Westberry "made in anger, frustration, maybe a little payback, could be all three of those." We agree. Therefore, while Westberry claims that he "simply set a fire in a fire pit and what occurred after that was an accident," the record belies such a claim. The record instead firmly establishes that Westberry knowingly caused physical harm to Sandra's house by means of fire. Accordingly, because the trial court's verdict finding Westberry guilty of one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2) was supported by sufficient evidence, Westberry's first assignment of error lacks merit and is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE CONVICTION IN THIS MATTER WAS AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE.

{¶ 19} In his second assignment of error, Westberry argues the trial court's verdict finding him guilty of one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2) was against the manifest weight of the evidence.[3] We again disagree.

{¶ 20} "[A] manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 2020-Ohio-3762, ¶ 18 (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.).

{¶ 21} Westberry argues the trial court's verdict was against the manifest weight of the evidence because "there is not extensive evidence to support" the trial court's

___

3. We note that, "[w]hen reviewing a jury verdict, the verdict may be reversed as against the manifest weight of the evidence only when there is unanimous disagreement with the verdict." *State v. Marcum*, 2016-Ohio-263, ¶ 10 (12th Dist.), citing *State v. Gibbs*, 134 Ohio App.3d 247, 255 (12th Dist. 1999). However, "convictions resulting from a bench trial may be reversed by a majority of the panel." *State v. Williams*, 2019-Ohio-992, ¶ 12 (8th Dist.); *State v. Burke*, 2013-Ohio-2888, ¶ 8 (4th Dist.); *State v. Hill*, 2011-Ohio-6217, ¶ 49 (7th Dist.).

decision finding him guilty. To support this claim, Westberry notes the "lack of physical evidence of an accelerant" and "the fact that the fire was set in a fire pit outside the home." Westberry also notes that he "never changed his story" about what he claims happened that morning. This includes Westberry's claim that, while attempting to get the fire in the firepit started, he got scared and left after hearing an animal make a screeching sound. Therefore, according to Westberry, the trial court did not simply lose its way by choosing not to believe his testimony, the trial court lost its way by choosing to "disbelieve [his] testimony despite the absence of contrary evidence." However, as the record indicates, the trial court was made aware that there was no physical evidence to prove Westberry had used an accelerant to start the fire. The trial court was also made aware that Westberry had never changed his story about what he claims happened that morning. But, even with that knowledge, the trial court nevertheless found Westberry's story about him "trying to keep warm" and "running back to [his] car to get away from wild animals" lacked credibility. We find no error in the trial court's decision.

{¶ 22} This court is required to give substantial deference to the trier of fact, in this case the trial court, "in issues involving the credibility of witnesses." *State v. Buckland*, 2023-Ohio-2095, ¶ 20 (12th Dist.). It is in fact "well-established that it is the trier of fact—and not this court on appeal—that makes determinations of credibility and the weight to be given to the evidence presented at trial." *State v. Sparks*, 2019-Ohio-3145, ¶ 10 (12th Dist.). This is because "whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness." *State v. Thompson*, 1997 Ohio App. LEXIS 4659, *17 (12th Dist. Oct. 20, 1997). It is equally well established that "[a] conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution." *State v. Baker*, 2020-Ohio-2882, ¶ 31 (12th Dist.). That Westberry's story

absolved him from any criminal wrongdoing does not mean the trial court was required to accept it as true. Such is the case here given the trial court's express finding Westberry's story about him "trying to keep warm" and "running back to [his] car to get away from wild animals" lacked credibility. Therefore, because the trial court's verdict finding Westberry guilty of one count of second-degree felony aggravated arson in violation of R.C. 2909.02(A)(2) was not against the manifest weight of the evidence, Westberry's second assignment of error also lacks merit and is overruled.

{¶ 23} Judgment affirmed.

PIPER and BYRNE, JJ., concur.